■ In the Matter of ETAN MERRICK. DAVID MERRICK. — Motion to vacate ex parte order denied. Concur — Sandler, J. P., Sullivan, Silverman and Fein, JJ.

Kupferman, J. P., dissents in a memorandum as follows: An ex parte order was entered by the Justice at Special Term preventing the petitioner, the wife and coconservator of David Merrick, the well-known theatrical producer, from using funds of his estate to promote the production of the musical play "42nd Street" in London, for which arrangements are ongoing. The Judge directed a hearing, now scheduled for May 29, to determine whether the investment should be made. ¶ The petitioner wife seeks vacatur of the ex parte order under CPLR 5704 (subd [a]). ¶ Mr. Merrick suffered a stroke and his long-time friend, Morton J. Mitosky, was appointed conservator. Mrs. Merrick was added as a coconservator at the end of 1983. Mr. Mitosky's application for leave to resign as coconservator was conditioned upon the filing and approval of his final accounting. ¶ For all intents and purposes, the petitioner wife is acting for Mr. Merrick. ¶ The musical show "42nd Street" has been running continuously on Broadway for three years and has out-of-town companies. It is contended that the next logical step is a London production. This position is supported by knowledgeable theatrical authorities. ¶ The petitioner contends that Mr. Merrick is worth some $50 million, although the Mitosky accounting shows net assets of close to $16 million. The president of the Shubert Organization, Bernard Jacobs, suggests that "42nd Street" alone is worth some $25 million. ¶ It is postulated that the London production would cost $1½ million. ¶ The guardian ad litem for the two children of David Merrick, Honorable Robert F. Wagner, with proper caution, opposes the vacatur of the stay and raises objections to the London production. Among other things, he contends that the cost of the production in London may be more than $1½ million. It would seem, however, that, with the depreciated value of the British pound and the fact that the kinks in the production of the show have been worked out in New York, the production costs, together with "running expenses," are fairly appraised. ¶ What we have here is a situation where the conservatee has built an estate founded on theatrical ventures and his conservator proposes to follow through on his previous experiences and approaches, and the judicial system intervenes to prevent it. On this basis, John D. Rockefeller could not have proceeded in the oil business nor Henry Ford produced automobiles. ¶ I would vacate the injunction.